The first case on today's docket is the case of In the Marriage of David Dosher versus Paula Dosher. We have Nathan Rowland for the appellant and we have Mr. Greg Stewart for the affidavit and you may proceed when you're prepared to do so Mr. Rowland. Thank you. May it please the court. We are the appellants in this issue. We have a Point County divorce. I'm representing the petitioner, the trial court and the appellant here. After a multi-day bench trial, the trial judge entered judgment dividing the property of the parties. There were no children to deal with in this divorce. They were all a majority at that point. We have some issues concerning the valuation of real estate, the proper award of some financial accounts and whether or not the court properly made a finding concerning the disposition of what we allege are two non-marital buildings being a grain bin, a farrowing house and whether or not proper decision was made concerning the dissipation of the particular $20,000 that was found to be a loan in the trial court. Concerning the valuation of the 30 acres. At the trial, while the petitioner did not have an appraisal on the particular 30 acres in question, he did present testimony and evidence of comparable sales and valuation and he pegged the valuation at $90,000. The opposing side presented testimony and evidence concerning a valuation of $121,200 on the particular 30 acres and the trial court chose the respondent's valuation. Our concern with that is in the ruling, the court never took into any consideration, didn't make any finding one way or the other concerning the differential in size of the comps from the appraiser versus the more similar acreage sizes that the petitioner presented in his valuations. Our opinion on that is that when you view real estate and the value that it may have, the comparableness of any particular sale has to be of a light manner to the property that's in question. So that's our concern that that really wasn't taken into consideration. That was argued, that was pointed out through the testimony. How about location? Location is a key point. These were all within White County. They were in differing ranges and the sales were at different time frames as well. That's true. However, location and size, if you have a piece of farmland that's of a bigger location, of course, or a bigger dimension, of course, it depends upon the soil type and everything else. But there is a premium to bigger tracts. And when you deal with a 30-acre tract versus tracts that are larger, you're going to have some valuation added to those larger tracts that if you had a similar 30-acre comparable, wouldn't be included. So that's our main concern on that point. In regards to the dissipation, this $20,000 loan that was made by the respondent to her sister-slash-brother-in-law, the court found that it wasn't dissipation because there wasn't a breakdown in the marriage at the time that this happened. Our concern is the letter that was admitted where the parties clearly had a breakdown in the marriage in July of 2008, some attempts to reconcile. The court found that that reconciliation was adequate to get us past the point of breakdown. The court made a finding that breakdown in the marriage would have happened sometime between July of 2009, when the respondent attempted to hire an attorney, and March of 2010, when the petitioner filed his petition for divorce. However, when we look at the Olson and Holthaus cases that I've cited in my brief, the court is directed to look at the beginning of the breakdown in marriage. And when we look at the Holthaus facts and the facts we have in this case, clearly we have a beginning of a breakdown that's even stronger based on the language of the document that these parties before the court entered into, showing that they're clearly distrusting of each other, they've separated their financial accounts because of that issue, and the line that I've cited in my brief that's in the document, that they would rejoin their accounts whenever they trusted each other, which apparently that never happened. We have no evidence of that, and clearly it led to a divorce. When we look at when the breakdown began, as directed in the Holthaus case, that's the point in time, July 2008, that we need to look at. And based on that, that's when this $20,000 loan, we refer to it as a transfer, happened. I think it's clear it's a dissipation. The ability of the respondent to collect that back from her brother-in-law, the testimony was he told her that he probably couldn't ever pay it back, that's a separate issue from whether or not it was dissipation or not. Clearly it was. Clearly that's the timeframe that the trial court should have looked at, and we believe that that should have been found to be dissipation. And then, of course, that $20,000 comes back into the marital estate, and a proper adjustment needs to be made for that. In regards to these two buildings, we don't know exactly what the size of the buildings are. They're of smaller nature. We're not talking about huge structures here, a caroling house, a green room. It's clear that these came from the petitioner's family, from his grandmother and his mother. There's some conflicting evidence about gifts or inheritance, how that actually happened. However, it's clear that the respondent testified that she didn't know exactly how they came to be on a property other than the petitioner brought them from his mother and grandmother's property. These aren't fixed structures. They're, quote, rolled or skids, or one's on skids and one was rolled onto the property. The trial court reconsidered that issue, in motion to reconsider, when that was brought up. Judge, you failed to address these two issues, give us a ruling. The court simply said they're on the marital property, on the real estate that's the marital residence, therefore they go with the marital residence. Well, there's no testimony that they're fixed fixtures, that they're fixed onto the property. The closest we get to that is there's a concrete pad in front of the green room. No indication that they can't be moved away as they were brought onto the property, skidded on or wheeled on. The complaint that the respondent had at the trial court was, well, my yard will be torn up if they're moved out. Well, I'm sure that the yard may or may not have been torn up when they were moved in. Any ruts can be fixed. That doesn't go to the nature of marital versus non-marital of these structures. Now, weren't these structures then moved prior to or something at a certain time back? They had been on the residence for a number of years. Okay, were they then moved back to where they came from or not? They were not moved again? No, they're still at the residence. Okay. At least as of today. Because one's on skids and one's on skids. Correct, exactly. And I assume it's still there. Okay. I don't know where they are today. Well, I just want to know if they were moved since. But clearly they were movable when they were brought on and movable at the time. And I believe the petitioner testified that that's how they would be moved on. But the grain bin wasn't disassembled and reassembled? As I understood it, the grain bin was on skids. I think this is more of a corn crib type. Oh, okay. As opposed to a big metal. Not a big metal. I think this is an old style. This was on his grandmother's farm. Okay. A traditional. Ear corn. Ear corn crib, exactly. And that's what was on the skids. So, again, something that could be split on and off. In regards to financial accounts, we've got $66,000 in multiple accounts here, three accounts. Our argument is that should have been an equal division rather than 100% to the wife. Again, taking into consideration all these adjustments, what we argue is a phantom value on the 30 acres. The whole award of these accounts, we believe that the court should return this to the trial court. And I believe, as I cited in my brief, that's the proper remedy here for a proper valuation because we have to make adjustments to the whole scheme when we consider in the dissipation and all the other issues. In regards to the attorney's fees, there were 7,500 attorney's fees that the petitioner was required to contribute towards his wife's attorney's fees. Our argument is, as we stated, the trial court had in its order to break down the monthly income after the maintenance adjustments. Basically, they're equalized. There's no particular showing from the court's dispositions that while it may be difficult to pay $7,500, that the respondent would be unable to do so or her financial position would be in such a situation that she would be put in dire straits. The baseline is all parties pay their own attorney's fees. There's nothing here showing that she's unable to do so. She has adequate income. And therefore, we would ask that, as argued in the brief, that the findings of the trial court on these five topics be overturned. The court remand this for proper valuation. If we have any questions. Thank you. Thank you, Mr. Rowley. You'll have the opportunity to further follow. Mr. Stewart. Mr. Stewart. Counsel. My name is Greg Stewart. I'm from Congranelli in Carmine. I've been counsel of record for Paula Dozier throughout these proceedings, trial court, and now here. What you have before you today is a garden variety Southern Illinois divorce case with no substantial issues, a modest marital estate that was divided by Judge Tom Foster, the resident circuit judge out of Gallatin County. As I went through this proceeding at the trial court level, the thing that impressed me the most was the detail which Judge Foster gave in his ruling. You have that ruling as part of the record. It's attached to the appellate's brief. Judge Foster went through this modest asset case and meticulously described how it was to be divided and handled the issues of maintenance, attorney's fees, and whatnot. And I was very impressed with the detail in which he gave, and I hope that you are, too. In this case, there were five issues raised on appeal. I'm going to go at those one by one. The first, as counsel said, this was a multi-day trial in my county. Most of our time was spent on evaluation of a 30-acre tract of farmland. What happened was is that Mr. Dozier didn't have it appraised. He testified he bought it about two years before the trial, and he paid $90,000 for it. We had the ground appraised by a certified general appraiser. She came in and testified that it was $121,200 near the time the trial was appraised value. Mr. Dozier complained about that and tried to testify about other tracts of ground that he knew were around and what they had been bought and sold for. He called an appraiser to testify on this issue that Mr. Rowland talked to you about, about different-sized tracts appraised differently. And the record would reflect what the appraiser said is, well, that can be true, but it depends on the willing buyer and willing seller. Sometimes small tracts sell for large premiums because adjoining landowners get fired. And the bottom line was it depends on tract by tract how property sells given its location and given the people that are trying to buy and sell. In our particular case, we had the appraisal at $121,200. His appraiser that he called about the tract differential size values testified that farmland in White County, Illinois, in the vicinity of this ground, had substantially appreciated over the time or from the time that Mr. Dozier had purchased the property until trial. Our appraiser testified the same thing. Farmland has substantially appreciated in southern Illinois over the past couple of years, which shows the increase in value from the time Mr. Dozier purchased it at $90,000 to $121,200 at the time of trial. More importantly for this court, the issue is this, and I've cited the cases in the brief. Should the court review that? Well, the judge's decision came within the range of the evidence. When that happens, courts of review really don't look at that. It was within the range of the evidence, and you can find Judge Foster's findings. I've set those on page 7 of my brief, a very detailed listing of why he found the ground to be valued as it was. Therefore, there is no issue based upon the law for this court to look at. It was within the range of evidence. It was validated by the testimony, and all Mr. Dozier had to do was get his own appraiser. Why didn't he? All we know is he didn't. The next issue is this dissipation issue. I tried to look at these things rather simply. Dissipation to me means money or value in the marital estate that should have been there isn't anymore. There's this argument about a $20,000 loan that was dissipation. It's not dissipation. That's an argument that was never in this case. I don't know where it came from, but it's here. The judge awarded the $20,000 loan to my client, Paula Dozier. It was not dissipation. Dissipation occurs is when if somebody gives their friend $20,000 and says, take off with this and you start buying the marital estate and you don't have $20,000 in, it's gone. It's not the case here. The $20,000 loan was accounted for by Judge Foster, was awarded to my client, even though he felt it had no value because of some testimony that occurred in the case about whether the loan could be repaid. So therefore, this $20,000 loan argument, it is a marital asset. If it's there to be divided, which it was by the court, it is not dissipation. So that argument, we believe, can easily be disposed of by this court. Next is the issue of the two outbuildings, the grain bin and the family house. We have cited to the record what the testimony was. It was very brief. There was a snippet of testimony by Mr. Dozier and a little bit of testimony by Mrs. Dozier. Mr. Dozier testified that the grain bin was a gift to him from his mother. That's all he said. Mrs. Dozier testified the grain bin was a gift to both of them by David's mother. There was no testimony about the family house, whether it was a gift or not. It was just moved from one place to another. What the judge noted was that these two buildings had been on the marital residence property for years and years and years, and his very detailed findings about these two outbuildings are set forth on page 10 of my brief. He went through them and thought up and talked about where they were, where they had come from, and his determination as to why they were part of the marital estate. Since the law requires if you want to claim non-marital property, you have to show by clear and convincing evidence the source, David never overcame that because he didn't present clear and convincing evidence that these two outbuildings were gifts solely to him from his mother. Without that evidence being in the record, you can't have a claim of non-marital property that would stand reviewed by this court. We believe Issue 3 is easily disposed of by this court. The fourth issue is Mr. Dozier complains about, I just didn't get a fair shake on the division of the marital estate. Now that's an abuse of discretion standard, different from the prior three issues I've talked about which are a manifest way to the evidence standard. As you look at this case, the question for this court is, could any reasonable person or would no reasonable person adopt the view that Judge Foster adopted at the trial court level in our case? The cases have said that the abuse of discretion review is akin to really no review at all, very deferential review standard to the trial court. In this particular case, in substance, Mr. Dozier argues that, well, I got less than Paul. If you really look at the facts of the case with two important additions, there was about an equal division of the marital estate by Judge Foster with the exception of one thing, that's a personal injury award that I'll talk about in a moment. When you do the math, the division of the marital estate with the exception of that personal injury award was right at 50-50. David miscalculates it as follows. He says you overvalued my farmland at $30,000. So there he took a $30,000 hit according to him, which we believe this court will not affirm. Secondly, he did not add in that the trial court said David dissipated almost $20,000 in assets and attorney's fees in this case. That's a $50,000 swing. When you add those back to David's alleged for the marital estate, the division was approximately 50-50 by the trial court. Could no reasonable person adopt that view on a lengthy marriage like this, that a 50-50 division couldn't occur? No. So under the abuse of discretion standard, we believe this court can easily dispose of that argument. The differential came in a personal injury award. My client was hurt. She was struck by a car while walking. The trial court heard her testimony about the injury she sustained. Basically, she was hit in the leg. She's looking at a knee replacement in the future. Was laid up for many months. Was unable to work. The judge awarded the lion's share of that award to my client. The evidence was that future medical bills, the knee replacement and all that would be on her dime. It would be her expense. Why? The testimony was she's on her husband's insurance. He works for the Department of Agriculture. She has state insurance. Clearly, when the divorce was done, she's off that insurance except for a COBRA election for a while. So these expenses were going to be Paul's. We've cited the cases which said that a lion's share award to the injured spouse of a personal injury warden is entirely appropriate. And that's what the judge did in our case, is he gave approximately 80% of that award to Paul. The final issue is the attorney. That's an abusive discretion standard. And I've went through in my brief and outlined why David's claim is incorrect. He argues that, well, she got more property than I did. And her income is about the same as mine. I shouldn't have to pay her fees because she's not shown an inability to pay and my ability to do so. David failed to look at the following factors. When Judge Foster set forth the incomes, out of David's income was already $1,330 a month that he was taking out voluntarily from his check and putting it in his deferred comp instead. The record indicates he did that just a few months before the trial started. He jumped his deferred comp withholding way up. The second thing is Judge Foster's findings did not attribute to Mr. Dozier certain amounts of income he had from an auction business he ran. I've outlined those in my brief. He netted in 2009, $941 a month. In 2010, almost $600 a month. When you add those up like I've done in the brief, I won't give you the full numbers, but David's income, even after the judge's award, is substantially more than my client's. He was awarded the assets which are noted. So when David says, I don't have anything left over to pay her with, he misses the point. He did. The judge noted it, even though his math didn't add it up at the very bottom. And the judge made his finding, which we set forth in here that he felt that under the circumstances of this case, there was the appropriate showing by Paul that attorney's fees were awardable or not. There's nothing that I've seen in the appellant's brief in this case to indicate otherwise. He just makes general arguments that I think that it's just not fair. At this level, that argument, without a citation to the record, should fail.  If you have any questions, I'll be glad to entertain them. Thank you, Mr. Stewart. Mr. Rowland, do you have a follow-up? On the anticipation of $20,000. The facts of the case are that this was $20,000 in cash that was cashed out by Paula, shipped down to her family out of state at the time the marriage was breaking down in July 2008, based on the written agreement that we've attached in our brief and was introduced at trial. To say that it's a loan, as was classified in the judgment, and to have no documentation, no notes, no scheduled repayment, it just doesn't ring true that this was an actual loan. This was clearly a hiding of funds just by the nature of what Paula did with the cash and how she shipped it out of state. And the key point that I think that the trial court hung its hat on was whether or not there was a breakdown at that time. We think he dismissed it based on the cases that I've cited. He stated, well, they tried to work it out, so that's good enough. It went another year to July of 2009 before she tried to hire an attorney, and then it went until March of 2010 before the petitioner filed for divorce. The year of 2008-2009, based on the whole house case, is the time frame that the court should have been looking at for dissipation. Does the court have any further questions? Thank you.